# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| D2K, INC., d/b/a Suzuki of Huntsville, SHOALS SUZUKI, INC., VARSITY SUZUKI, INC., and GARY LINAM, an individual, <br><br> **Plaintiffs** <br><br> vs. <br><br> **AMERICAN SUZUKI MOTOR CORP.**, a California corporation, <br><br> **Defendant.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **CASE No.: CV 09-S-2436-NE** |

## FIRST AMENDMENT TO COMPLAINT

Plaintiffs file this First Amendment to its Complaint adding the following allegations and claims against the original Defendant American Suzuki Motors Corporation (hereinafter "ASMC").

1.    That the Plaintiffs adopt and reallege paragraph numbers 1 through 86 of its original Complaint, as well as assert the following allegations and claims against Defendant ASMC:

2.    During 2001, 2002 and 2003, Defendant ASMC solicited the Plaintiff to purchase a Suzuki franchise to no avail.  In a renewed effort to induce the Plaintiff to enter into a franchise agreement, the Defendant touted its comprehensive plan to increase vehicle sales, and to offer new product,

marketing, dealer development and customer service initiatives in order to accelerate Suzuki's move further into the U.S. automotive mainstream.  This plan, known as the 357 Plan, was predicated upon the Defendant's commitment to triple its 2002 new vehicle sales in the United States within five (5) years by 2007 (or 200,000 vehicle units), including an expansion of Suzuki's product line and the introduction of nine new models within a five year period.

      3.    At the same time, Defendants solicited the Plaintiff to participate in its Suzuki Square Program, which was a facilities renovation program designed to create a shopper friendly retail environment with a distinctive visual style. The Suzuki Square Program was the cornerstone of ASMC's aggressive plan to triple its U.S. vehicle sales by 2007.     In soliciting the Plaintiffs, the Defendant represented that Suzuki Square dealers sold many more vehicles, had increased service and parts revenues, and had earned significantly higher profits than non-Suzuki Square dealers. However, as the Plaintiffs would discover much later, such representations were false as the Defendant failed to disclose the substantially increased costs associated with participating in the Suzuki Square Program.

      4.    As stated above, in furtherance of inducing the Plaintiffs to enter into a Suzuki dealer franchise agreement, the Defendant made repeated

representations regarding Suzuki's commitment to the U.S. automotive market, including a steady allocation of new vehicle product, the launch of additional new vehicles, aggressive sales incentives and promotions, as well as marketing and advertising support.

5. Based upon the Defendant's representations and omissions of material fact, the Plaintiffs ultimately entered into three (3) Suzuki franchise agreements with the Defendant: In January 2004, the Plaintiff purchased Huntsville Suzuki; in January 2006, Plaintiff opened Shoals Suzuki; and in October 2006, Plaintiff opened Varsity Suzuki. Each of these dealerships participated in the Suzuki Square Program and thereby the Plaintiffs invested substantial monies in its dealership facilities and operations. Such investments were made in reliance upon the Defendant's prior representations of dealer assistance and support, including but not limited to a competitive vehicle product line, an equitable allocation of vehicles, as well aggressive sales incentive and advertising support.

6. Contrary to the representations made by ASMC which induced the Plaintiff to purchase its three Suzuki franchises, beginning in the latter part of 2006, the Defendant began dramatically reducing its vehicle production, including the discontinuance of several popular models from its vehicle line, and also reduced its vehicle allocations to the Plaintiff. In

addition, the Defendant dramatically reduced and/or eliminated its sales incentives and advertising support programs.

7. Based upon the Defendant's acts and omissions, the Plaintiffs were deprived of the ability to make informed business decisions, and evaluate the feasibility and risks of entering into a franchise agreement with the Defendant, including participation in the Suzuki Square program.  As a result, the Plaintiffs were caused to enter into dealer agreements with the Defendant, and thereby expended substantial monies in furtherance of these agreements, based upon commitments and agreements which were later disavowed and/or not honored by the Defendant.

## COUNT ELEVEN

### Violation of Alabama Code § 8-20-4(2) of The Alabama Motor Vehicle Franchise Act

8. Plaintiffs hereby adopt and incorporate herein by reference all prior paragraphs of this Complaint as if set out here in full.

9. Plaintiffs allege that the Alabama Motor Vehicle Franchise Act requires automobile manufacturers to exercise good faith in its dealings with franchise owners and operators.

10. The Defendant has breached its duty of good faith and fair dealing by inducing and/or requiring the Plaintiff to participate in its Suzuki

Square program and thereby expend substantial monies to upgrade its dealership facilities.

11. That in furtherance of inducing Plaintiffs to participate in its Suzuki Square program, Defendant represented that it would support the Plaintiffs' dealership operations through its competitive vehicle product line, its allocation of new vehicle product, as well as through aggressive sales and advertising incentive programs.

12. That Defendant further represented that participants in the Suzuki Square Program realized substantially increased profits through increased sales, service and parts revenues, and enhanced customer satisfaction.

13. Despite such representations, beginning in the latter part of 2006, the Defendant drastically reduced its vehicle production, including discontinuing several popular vehicle models, and thereby its allocation of new vehicles to Plaintiff. Additionally, the Defendant dramatically reduced and/or discontinued sales and advertising incentives to the Plaintiffs.

14. Further, Defendant failed to advise Plaintiffs of the substantially increased costs associated with participating in the Suzuki Square Program.

15. Based upon such representations and omissions of material fact by ASMC, the Plaintiffs, as well as most other Suzuki dealers who were induced to participate in the Suzuki Square program have now been forced out of business and have suffered substantial financial loss or financial ruin.

16. As a result of the Defendant ASMC's unlawful actions, Plaintiffs have been caused to suffer the following injuries and damages: (a) Plaintiffs lost their business; (b) Plaintiffs lost sales; (c) Plaintiffs lost income; (d) Plaintiffs were deprived of a fair allocation of new vehicles; (e) Plaintiffs lost potential warranty and service work; (f) Plaintiffs lost market share; (g) the reputation of Plaintiffs has been damaged; (h) Plaintiffs were caused to incur economic damages in the form of reduced sales revenue and lost warranty work; (i) Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to promote their dealership operations; (j) Plaintiff were caused to incur economic damages in the form of expending substantial sums of money to purchase and/or lease the necessary land, building(s), supplies, and/or equipment required to operate their dealerships; (k) the value of the Plaintiffs' franchise was destroyed; (l) Plaintiffs were caused to incur economic damages in the form of the payment of attorneys fees to prosecute this action against Defendant; (m)

Plaintiffs lost the use of their money and interest thereon; and (n) Plaintiffs have suffered such other damage as shall be enumerated hereinafter.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause. Additionally, pursuant to Alabama Code § 8-20-11, Plaintiffs further request an award of attorney's fees and costs.

## COUNT TWELVE

### FRAUD

17. Plaintiffs hereby adopt and incorporate herein by reference all prior paragraphs of this Complaint as if set out here in full.

18. Plaintiffs allege that Defendant ASMC's material misrepresentations and/or material omissions of fact fraudulently induced the Plaintiffs to enter into its dealer franchise agreements, as well as participate in its Suzuki Square program.

19. That Defendant ASMC fraudulently induced the Plaintiffs' participation in the Suzuki Square Program by committing to support the Plaintiffs' dealership operations through the production of a competitive vehicle line, an equitable allocation of such vehicle lines, and the provision

of an aggressive sales and advertising incentives and other assistance to Plaintiffs' dealership operations.

20.   Plaintiffs allege that the misrepresentations and/or omissions of Defendant were made with the knowledge and intent that such would be relied upon by Plaintiffs in the course of their business deliberations, and/or said misrepresentations and/or omissions were made negligently and/or wantonly and/or willfully and/or recklessly and/or intentionally.

21.   As a result of the Defendant ASMC's unlawful actions, Plaintiffs have been caused to suffer the following injuries and damages: (a) Plaintiffs lost their business; (b) Plaintiffs lost sales; (c) Plaintiffs lost income; (d) Plaintiffs were deprived of a fair allocation of new vehicles; (e) Plaintiffs lost potential warranty and service work; (f) Plaintiffs lost market share; (g) the reputation of Plaintiffs has been damaged; (h) Plaintiffs were caused to incur economic damages in the form of reduced sales revenue and lost warranty work; (i) Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to promote their dealership operations; (j) Plaintiff were caused to incur economic damages in the form of expending substantial sums of money to purchase and/or lease the necessary land, building(s), supplies, and/or equipment required to operate

their dealerships; (k) the value of the Plaintiffs' franchise was destroyed; (l) Plaintiffs were caused to incur economic damages in the form of the payment of attorneys fees to prosecute this action against Defendant; (m) Plaintiffs lost the use of their money and interest thereon; and (n) Plaintiffs have suffered such other damage as shall be enumerated hereinafter.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause.

## COUNT THIRTEEN

## BREACH OF GOOD FAITH AND FAIR DEALING

22. Plaintiffs re-allege and incorporate by reference all allegations and contentions heretofore stated in this Complaint as if fully set out herein.

23. Plaintiffs allege that the Dealer Agreements it entered into with the Defendant contained an implied duty of good faith and fair dealing.

24. Pursuant to these Dealer Agreements, as well as the commitments and representations made to the Plaintiffs, Defendant ASMC owed a duty to provide support and assistance to the Plaintiffs' dealer operations through the production of an competitive vehicle product line, an equitable allocation of such vehicles, the provision of an aggressive sales

and advertising incentives, as well as dealer floorplan financing assistance, and other assistance to Plaintiffs' dealership operations.

25.   The Defendant breached its obligations under the Plaintiffs' Dealer Agreement, including its duty of good faith and fair dealing, as well as breached its commitments made to the Plaintiffs and the entire Suzuki dealer body.

26.   As a result of the Defendant ASMC's unlawful actions, Plaintiffs have been caused to suffer the following injuries and damages: (a) Plaintiffs lost their business; (b) Plaintiffs lost sales; (c) Plaintiffs lost income; (d) Plaintiffs were deprived of a fair allocation of new vehicles; (e) Plaintiffs lost potential warranty and service work; (f) Plaintiffs lost market share; (g) the reputation of Plaintiffs has been damaged; (h) Plaintiffs were caused to incur economic damages in the form of reduced sales revenue and lost warranty work; (i) Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to promote their dealership operations; (j) Plaintiff were caused to incur economic damages in the form of expending substantial sums of money to purchase and/or lease the necessary land, building(s), supplies, and/or equipment required to operate their dealerships; (k) the value of the Plaintiffs' franchise was destroyed; (l) Plaintiffs were caused to incur economic damages in the form of the

payment of attorneys fees to prosecute this action against Defendant; (m) Plaintiffs lost the use of their money and interest thereon; and (n) Plaintiffs have suffered such other damage as shall be enumerated hereinafter.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause.

## COUNT FOURTEEN

### NEGLIGENT AND WANTON SUPERVISION

27. Plaintiff re-alleges and incorporates by reference all allegations and contentions heretofore stated in this Complaint as if fully set out herein.

28. Based upon the relationship between the parties, the Defendant was under a duty to use due care, skill, and knowledge to properly train and supervise its employees, agents, and/or representatives in providing adequate and competent sales and service assistance to dealers, such as Plaintiff, who sell and service the Defendant's vehicle products.

29. Based upon the significant authority wielded by the Defendant's employees, agents, and/or representatives responsible for the allocation and distribution of vehicles in the geographical region encompassing Plaintiffs' dealerships, the Defendant had a duty to regularly

monitor and oversee said employees, agents, and/or representatives to ensure that the proper sales and service support and cooperation was extended to the Plaintiff and other dealers.

30. Plaintiffs relied upon the Defendant to regularly evaluate, investigate, oversee, and supervise the activities of the Defendant's employees, agents, and/or representatives to ensure that said employees, agents, and/or representatives were providing the proper sales and service support and cooperation to the Plaintiff, including, but not limited to, ensuring that said employees and agents were providing: (a) fair and equitable new vehicle product allocation; (b) service support; (c) warranty reimbursement; (d) sales incentive support; (e) reimbursement for advertising and/or promotional campaigns; and (f) assistance with any additional needs and requests of the Plaintiff.

31. The Defendant negligently, wantonly, and/or recklessly failed to train, supervise, and/or monitor the activities of its employees, agents, and/or representatives to ensure that said employees, agents, and/or representatives were properly performing their duties. The Defendant knew, or, in the exercise of reasonable care, should have known that its employees, agents, and/or representatives were not fulfilling their duties with regard to Plaintiffs.  In the face of such knowledge, the Defendant negligently,

wantonly, and/or recklessly failed to supervise or oversee the activities of the aforementioned employees, agents, and/or representatives and further failed to take appropriate remedial actions to correct the deficiencies and improprieties which were reported by the Plaintiff.

32. When confronted with Plaintiffs' repeated complaints and pleas for assistance regarding new vehicle product allocation, service support, sales and advertising support, the Defendant failed and refused to take appropriate remedial action.

33. As a result of the Defendant ASMC's unlawful actions, Plaintiffs have been caused to suffer the following injuries and damages: (a) Plaintiffs lost their business; (b) Plaintiffs lost sales; (c) Plaintiffs lost income; (d) Plaintiffs were deprived of a fair allocation of new vehicles; (e) Plaintiffs lost potential warranty and service work; (f) Plaintiffs lost market share; (g) the reputation of Plaintiffs has been damaged; (h) Plaintiffs were caused to incur economic damages in the form of reduced sales revenue and lost warranty work; (i) Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to promote their dealership operations; (j) Plaintiff were caused to incur economic damages in the form of expending substantial sums of money to purchase and/or lease the necessary land, building(s), supplies, and/or equipment required to operate

their dealerships; (k) the value of the Plaintiffs' franchise was destroyed; (l) Plaintiffs were caused to incur economic damages in the form of the payment of attorneys fees to prosecute this action against Defendant; (m) Plaintiffs lost the use of their money and interest thereon; and (n) Plaintiffs have suffered such other damage as shall be enumerated hereinafter.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause.

### JURY DEMAND

### PLAINTIFFS DEMAND TRIAL BY STRUCK JURY

        Respectfully submitted,

        s/Thomas E. Baddley, Jr.
        THOMAS E. BADDLEY, JR.

        s/Jeffrey P. Mauro
        JEFFREY P. MAURO

**BADDLEY & MAURO, L.L.C.**
Suite 100, 2545 Highland Avenue
Birmingham, Alabama 35205
205/939-0090

**CERTIFICATE OF SERVICE**

      I hereby certify I have caused a copy of the foregoing document to be electronically filed and issued for service via electronic mail on counsel and/or parties listed below on this date – May 17, 2010:

Kurt D. Williams, *admitted pro hac vice*
Kirk A. Peterson, *admitted pro hac vice*
Aaron M. Kroll, *admitted pro hac vice*
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri  64108
Telephone:      (816)561-7007
Facsimile:      (816)561-1888
E-Mail:      kwilliams@bowse-law.com
                kpeterson@bowse-law.com
                akroll@bowse-law.com

-and-

Nicholas B. Roth, ASB No. 0504-072n
Eyster, Key, Tubb, Roth, Middleton & Adams, LLP
Post Office Box 1607
Decatur, Alabama  35602
Telephone:      (256)353-6761
Facsimile:      (256)353-6767
E-Mail:      nbroth@eysterkey.com

                                        s/Jeffrey P. Mauro